Amos v. Attorney General of the United States. Good morning. Good morning, Your Honors. My name is Jessica Rickaball, and together with Professor Mary Levy, we supervise the Temple Federal Appellate Clinic. And with the Court's permission, 3L Colleen Doherty will present this morning's argument on behalf of Petitioner Mr. Amos. Thank you. Thank you. Good morning. Good morning. Congratulations on graduating in a few days. Thank you. Are you going to graduate? Let's not be presumptuous. Not yet. I haven't gotten my grades. As far as you know. That depends on how well you do today. No tension. May it please the Court. My name is Colleen Doherty. On behalf of the Petitioner, Jaeola Amos, I request two minutes for rebuttal. Sure. This is a case where the government has conceded error. The agency's analysis of the CAT claim was improper. The IJ will need to redo the MIRE analysis. Hang on to that for a second. I agree with you. I do think that the response from the Attorney General is such that they've basically conceded the MIRE analysis. The issue is, will it be remanned? We can discuss that in a second. What about the, and I'm not pronouncing this correctly, matter of Sebasti? And I'm not sure they responded to that either in terms of requiring collaboration, but not telling the person petitioning for relief under the INA why they need collaboration and the matters that need to be collaborated. Could you address that for a second? Your question is the connection between the corroboration requirement and the CAT claim? I said collaboration. Corroboration. You're right. Sure. So this court's rule, the abdullae inquiry is required when an IJ faults an applicant for not having corroborated a claim and has not provided an inquiry ahead of time. Here, the IJ denied all forms of relief and stated that the petitioner had not corroborated his claims. And this court finds that that is unacceptable if the IJ never provided an inquiry, never gave notice to the applicant of what he wanted corroboration of and an opportunity to provide that corroboration, whether that was pointing to evidence already in the record that corroborates those facts or providing new evidence. In Blanco, this court also addressed the particular problems when the abdullae inquiry is violated in the context of a CAT claim because of the interest in preventing the removal of someone who is likely to experience torture upon return to their country. And so in terms of the problems with the CAT analysis, in addition to the fault in the Myrie analysis, if the IJ wanted evidence to corroborate Mr. Amos' CAT claim and did not provide that inquiry and then faulted him for not corroborating, then that also would be another reason to remand to the IJ to correct that part of the CAT analysis. Why the IJ? Why not the BIA? Because the abdullae inquiry is a responsibility that this court has placed on the IJ and not on the BIA. It could involve additional fact-finding given that it is a conversation with the applicant about what evidence is in the record and what evidence the adjudicator would like to see. As the BIA is only appealing and generally not accepting new evidence, it would not be appropriate for the BIA to remedy that. And you're correcting me. It is the abdullae inquiry. I would confuse that with Saba Sabe, which is a whole different issue. I want to get to that also because that seems to be lacking here. In terms of the 371 conspiracy, why shouldn't we look, in terms of whether or not this is a particularly serious crime, not to 371, which doesn't really say much when you're not charged with a conspiracy against the government, but look to the underlying offense of the obtaining of the passport, the fraudulent obtaining of the passport? Because of what you just said, Judge McKee, 371 doesn't say much. 371 is a very, very broad statute that is meant to create an umbrella for almost every possible federal crime. It does not give almost any information about the nature of the crime. But in Luciga, this Court emphasized that step one of the PSC analysis has meaning. That step involves the adjudicator evaluating the nature of the crime based on the elements of the crime of conviction in order to determine whether the crime falls within the ambit of the PSC. But the elements of 371 say almost nothing about the nature of the crime. So if, let's say we agree with you that the BIA, it looks like the IJ got this right, right? The IJ looked at the elements of passport fraud as well as 371, it appears to me. And then the BIA just looked at 371. So let's say we agree the BIA got that wrong. They should have addressed passport fraud. But then we look at passport fraud, and that doesn't seem to help you much. So couldn't this be harmless error? This is not harmless error, and I want to real quick touch back on your point about the IJ. The IJ did no analysis about whether the elements of the crimes fell within the ambit of a PSC. He did list out the elements of both Section 371 and the underlying crime, but did no legal analysis before moving on to considering the facts and circumstances. In terms of the BIA's error, I already forgot your question because I answered mine first. If it needed to look at the elements of passport fraud, we'd be looking at a crime that allows individuals to improperly come into this country, which seems pretty dangerous. And again, when the question is whether something falls within the ambit of whatever that brings us. So it seems like are the elements bad enough to maybe be a particularly serious crime? It seems like that's satisfied with passport fraud. I want to make two points in response to your question. The first point is that in Farouk, Judge Restrepo wrote that even if a crime always falls within the ambit of a PSC at Step 1, the agency still has to perform that analysis without legal error. And the reason being is that this court cannot say with legal certainty that an incorrect or correct analysis at Step 1 would have no effect on the Step 2 analysis. And secondly, the Board's decision in matter of LS, which evaluated a similar crime, alien smuggling, the Board found there that that was not a PSC. It considered the government's security interests, which are very similar to the interests here regarding passport fraud, and found that that was insufficient to support a finding of a PSC. And I bring that up to show both that this particular crime, because it's very similar, might not be found to be a PSC if it is properly evaluated at Step 1. And also to show that this is a discretionary determination within the confines of the NAM 2-step process. Sometimes the agency makes surprising decisions. Alien smuggling was found not to be a PSC, and similarly, passport fraud could be found not to be a PSC, but the agency has to follow the process to make that determination and cannot go outside of the confines of this court's precedent. What, if anything, did it get wrong at Step 2? Well, the issue with Step 2 is that in Step 1, they had not... We don't think they should have reached Step 2. And in Step 2, again, that is a discretionary determination by the agency. I can't say what outcome they would come to. I do think that the emphasis in our brief on the facts and circumstances here indicate that there could certainly be a finding that this was not a PSC. Mr. Amos obtained these passports for a family of three, of a woman who he was very close friends with, who was also from Nigeria and afraid for her life and needed to flee. Since then, he deeply regrets his conduct. He regrets the effects on his family. He is not a danger to his community. He has not committed any other crimes. So I think it would be a very reasonable result to find that in Step 2, this isn't a PSC. But I think that a proper analysis at Step 1 might stop at Step 1 and never reach Step 2. Do we need to decide whether it would stop? Do you agree that we can engage in a harmless error analysis at Step 1? This court has said that harmless error does not apply when the agency incorrectly applies the legal analysis at Step 1 of the PSC evaluation. If a 371 conviction must be evaluated considering also the elements of the underlying offense, that did not happen here. And so it is not harmless error because, again, as this court said in Farouk, Step 1 has to be done properly without legal error every time, even if a crime there, it was wire fraud, always falls within the ambit at Step 1. The adjudicator is still required to do that process. Why couldn't we do that? And it happens in other contexts. Why couldn't we do the harmless error analysis ourself under Step 2? The statute here right now, 1542, is a really simple statute. It's not complicated. And determine whether or not the elements of that suit qualify for a particularly serious offense. Those elements need to be considered at Step 1 and not Step 2 because in matter of NAM, the board set up a two-step analysis. And in Luciga, this court said that Step 1 has meaning. Step 1 is meant to be a threshold. Not every crime is meant to pass that threshold. Section 371 can be used to charge almost any federal crime, but not every crime falls within the ambit of a PSC and therefore not every conspiracy falls within the ambit of a PSC. I agree with all that, but why couldn't we conclude, yeah, they blew it here in terms of the NAM analysis, and then look at the elements of 1542 ourselves and determine whether or not that meets the requirement for a particularly serious offense, whatever that magic language is that would disqualify them. Number one. Number two, that's probably the most troubling question. The other issue, though, as you mentioned discretionary review, and the IJ did deny it as an alternative, as a matter of discretionary review, didn't he? I assume it was a he. Yes. So addressing your first question, I do want to make clear that we do believe that if the agency had properly separated the steps and considered the underlying crime at Step 1, then it would have found this was not a PSC and not reached Step 2. However, to the extent our brief suggested that this court could decide as a matter of law that this was not a PSC, that was inartful. The court does not have jurisdiction to make that decision of whether the outcome of the PSC determination was correct or incorrect. But why not? It's a strictly legal determination. It's not discretionary. Why wouldn't we be able to make that determination ourselves? Based on the statute, because Mr. Amos was convicted of a CIMT, this court can only look at the questions of law and constitutional questions. And this court has said, I believe most recently in Bent, that looking at the PSC determination, whether the analysis was applied correctly is a legal question, but the outcome of that determination is a discretionary determination by the agency. And therefore, in this case, the court is not able to review the outcome of the PSC determination or its final determination within either one of those steps, as long as it follows the process of those two steps. Can I take you back to the corroboration issue? So there was a credibility finding about Mr. Amos and about his partner, and then there was also a comment about a lack of corroboration. I know that those are supposed to be separate analyses, but how does one affect another? And given that there is a negative credibility finding, that could end the entire inquiry for asylum and withholding, such that we wouldn't even have to reach particularly serious crime. So tell me why the corroboration issue matters in terms of credibility. The relationship between corroboration and credibility is that perhaps, for one, if the IJ had properly provided the Abdullah inquiry and the petitioner had been able to provide corroboration of some of the implausibilities or inconsistencies that the IJ identified, then perhaps the IJ would not have reached the same credibility determination. Again, because the IJ did not specifically explain which facts he wanted corroborated, we can't say for certain, but it is very possible that the lack of corroboration, the lack of a proper Abdullah inquiry prejudiced the credibility determination. If it had been done properly, it might have bolstered their credibility. I mean, there are certain things it seems like it would be really hard to corroborate, like one of the inconsistencies was with regard to the stipulated facts and the guilty plea, and then Mr. Almas' testimony that the IJ found to be contradictory there. So if we sort of jot down all the things that are unlikely to be corroborated, then we may nonetheless be left with a negative credibility finding. That could be true. However, credibility determinations are made on a holistic basis. So to say that one or two items that the IJ found implausible or inconsistent could not reasonably be corroborated with documentary evidence is not to say that there was no effect on the credibility determination and that it would not have been, that the outcome would not have been different without whatever corroboration the IJ did want to see in this case. There's an issue here about the interpreter that I wanted to briefly explore with you. I mean, this is the interpreter for his witness, not for your client. Do you know, and I won't even try to pronounce her name, do you know, did she ask for an interpreter or was she given an interpreter at her own invocation proceeding? At her own proceedings, I do not have that information. If there are no other questions, I'll rest until tomorrow. Thank you very much. Ms. Witry. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Sarah Witry on behalf of the Attorney General. This morning I'd like to briefly address a few points that Your Honors have raised before moving to you. You may speak even, not faster than, but as fast as Ms. Kahn. My apologies, Your Honor. I still have been wondering something about brain chemistry. I definitely do have an issue with that, and I will try. I have a lot I'd like to try to address as well, but I'll try to slow it down. Briefly, on the issue of adverse credibility and corroboration and the Abdelai Inquiry, it's our position that the Court need not reach that issue. That goes to eligibility for asylum and withholding of removal. The particularly serious crime analysis in this case disposes of asylum and withholding of removal. Why is that not wrong here? I said that very awkwardly. Why should we sustain that finding, particularly serious crime, when the IRS itself, the BIA itself has said that you have to look, and NAM, that under a 371 conspiracy, the categorical approach requires not looking at the elements of the 371, but to the underlying crime that is the absence of conspiracy that gives you the substance of a 371 charge. That wasn't done here. Your Honor, we would disagree that that was not done here, and if I may, I would like to provide a lengthy answer to your question that first starts with an issue you raised about whether and which part of this issue is discretionary. It's our position that the Wilkinson case from the Supreme Court, a little under two months ago, really the litigation stemming from that case has given us a better understanding, an evolving understanding, of what the standard of review is for many types of issues across immigration, including particularly serious crime analysis. What does that say? Yes, Your Honor, I can provide that. Because of the evolving nature of that, I do think the... I apologize to the extent that my brief does not contain some of the nuances I want to provide today that we've been learning from subsequent litigation, and I do have that cited. First, I just want to try to summarize briefly our position on the standard of review of the particular serious crime, and the site for that is 144, Supreme Court, 780, March 19th, 2024. And if I just may briefly, before getting to the merits of your question, Your Honor, our position is that the standard of review of particularly serious crimes, we know more nuances now from Wilkinson, and this is a two-step process that the agency must go through under a matter of NAM and under this Court's decision, this Court's opinion in Lusiga. However, when we look at the two steps, what we understand from Wilkinson is that many immigration issues, they are made up of sub-questions of law and sub-questions of fact, and mixed questions of fact and law. And our belief is that each of the two steps in this analysis has two sub-questions. And so in Step 1, there are two questions, whether the agency considered only the elements at Step 1. We believe that is a pure question of law that the Court should review de novo. The second part of Step 1 is whether the agency properly determined that the elements potentially brought the petitioner's offense within the ambit of a particularly serious crime at Step 1. And we argue that there is no legal authority describing what within the ambit means. And because there's no legal standard, there's nothing for the agency to apply. There's no legal standard, and so there's nothing for this Court to review. And thus, this part of the question, whether the elements potentially brought the offense within the ambit, is unreviewable because it's solely discretionary. The legal support for this position comes from Heckler v. Chaney, 470 U.S. 821-832. Quote, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to review. The agency's exercise of discretion. And I will try to move through this quickly. In Step 2, we believe there are two sub-questions. The first is whether the agency applied the correct factors at Step 2. In other words, did they use the Frantescu and MAM factors, or did they apply hardship law, or did they apply torture law, and something wrong, right? Whether they used the correct factors. We believe this is a pure question of law, which this Court should review de novo. The second sub-question in Step 2 is whether the agency properly concluded that the offense was a particularly serious crime at Step 2. This is a very factual question of law. It's very similar to the question in Wilkinson. It's a mixed question of law and fact, which is, quote, primarily factual. And because of that, the Supreme Court tells us the standard of review must be deferential. Can I stop you there? Yes. Because Wilkinson was about applying the law to an undisputed set of facts. And I don't see this situation as involving an undisputed set of facts, particularly given the credibility and corroboration issues that Ms. Dougherty has mentioned. Your Honor, I do agree that a lot of the adverse credibility facts and the factual findings from the judge are contested by the petitioner, but we are not at this time considering the adverse credibility and those facts. The facts that we're talking about here are whether the facts as discretionarily decided on and found by the immigration judge were a particularly serious crime. And so those facts would be once we've gotten to Step 2. This is the end of Step 2, and we can talk about Step 1 in just a moment. At the end of Step 2, those facts would be this person, the petitioner, had the plea agreement, and we read in the plea agreement that they provided the false immigration documents to people who had not been vetted. And so it's facts like that that we don't believe the petitioner is challenging. We have not seen in any of the petitioner's briefing that they're challenging any of the facts related to his criminal conviction or his absconding to Canada instead of reporting to serve his sentence. And so that is the standard review context, and I concede it's quite complicated. I think that's something that Wilkinson has clarified for us, is that there are a lot of complex sub-questions regarding the standard review. With regard to Step 1, yes, Your Honor. Just a second. To my knowledge, there's nothing defining particularly serious crime. That just kind of comes out of the ethers, and whatever the particular adjudicators feel is particularly serious. Is that right? I think, Your Honor, that I would generally agree with that, and I would also say that the agency has endeavored to provide clarification in its role as providing expertise on this matter, and there are published board decisions addressing the term, but the statute certainly doesn't define it. Okay. So where does that leave us? I don't want to venture into subromney if I don't have to, but where does that leave us in terms of the deference we should apply to the agency? I think the court has addressed in past decisions, in past opinions, that the decision in matter of NAM from the board has been deferred to, and that opinion, that decision does require, excuse me, that opinion does provide a lot of clarification from the agency's point of view about what is particularly serious. Well, it provides a lot. You said NAM is what you're referring to? Yes, matter of NAM. Procedurally, that helped, but I'm not sure substantively it helps much. It tells us how we're supposed to look at it, but I'm not sure it gives us much of a metric to apply to the issue that we're looking at through the NAM lens. I would agree, Your Honor, and I think to the extent that there is not a specific legal standard delineated, that shows that it doesn't provide this court with much to review when looking for a legal standard and whether the agency applied it. At step one of this case, I would just want to briefly flag that we do feel that the petitioner failed to exhaust an argument, did not put the board on notice what it would challenge about the IJ's decision. I want you to go where you're going, but I'll pull you back a bit. Yes. If there is nothing there to limit the discretion or the exercise of discretion on the part of the BIA and the IJ, doesn't that create an issue? I'm sorry, can you repeat the last part? If there's nothing there to limit or to channel their discretion in terms of what constitutes a particularly serious offense, that would seem to be a problem. Let me give you a quick example. I don't want to use up all your time with this, but I remember wrestling with this when I was a trial judge, car theft. Car theft in Philadelphia, assuming that it's not done in a manner that endangers the people, I'm not certain that it's a particularly serious offense. If you're talking about somebody stealing a pickup truck that someone has in the garage and drives when the roads are bad. But if you take that same pickup truck and you take it to the situation where it's a rural farmer whose livelihood depends on that pickup truck, that's a particularly serious offense. You're threatening the person's survival. It depends so much on context. And I'm not certain that there's anything here that helps the BIA decide what's a particularly serious offense. Or maybe that helps you because it goes to discretion that we can't review. But it seems to me that we ought not to be powerless to sit back and allow decisions to be made that don't seem to have any kind of rhyme or reason to them. Yes, Your Honor. I think that's a very valid concern. And I do think that the agency is empowered to and has developed expertise in order to become expert in determining what is particularly serious and what isn't. But I also think there is protection built into its discipline. Well, they think everything's a particularly serious offense. Have you ever seen a case where the BIA said, that's not a particularly serious offense? Do you know of any such case, the BIA, if a petitioner, an alien, however you want to refer to the person, gets in trouble with the BIA because they've committed some crime? I have yet to see a situation where the BIA said, that's not particularly serious. Yes, Your Honor. I think that actually does happen more often than we would expect. And it's because those cases don't get litigated at the appellate level because the petitioner prevails below. And one example would be jaywalking. So if there's a jaywalking statute and the petitioner is convicted of it, those elements. We're not yet at a point where the BIA is initiating removal proceedings for someone because they jaywalked. Correct, Your Honor. It would be on a different basis that they would be removable. But I'm simply bringing up, there are examples of crimes, and that's a silly example, where the agency has determined. Well, maybe that would be so silly in this day and age. Well, fair enough. And so what I wanted to mention is there are protections in place. And this court is empowered to examine that question, that second sub-question of the particular serious crime analysis, where the agency must properly apply the existing legal standard, amorphous as it may be, to the facts. And so Wilkinson has recognized that it's important to permit the agency to engage in factual findings, and those are not reviewable, but the agency still must apply the legal standard correctly. And so that's why it should be a deferential standard, but it isn't a de novo, I'm sorry, it isn't an unreviewable question. This court can and should review it. And so at step one, it's our contention that the agency, the board, did comply with LUZEGA in this case. And the way that they did that was they focused solely on the elements at step one. There's no contention, and I don't think that there's anything in the record to the contrary, that the board focused solely on the elements. The board did not look at the police report. The board did not look at other extra element information. But the question is whether they looked at all of the elements, including the underlying crime. I would argue that they did, Your Honor. And the way that we know that is from looking at the many times they referenced the underlying statute of conviction. And in matter of LUZEGA, I'm sorry, in LUZEGA and matter of NAM, the requirement is, this is a quote from LUZEGA, first they must quote. There's literally one sentence discussing the elements, and it just recites the first paragraph of 371, including, you know, any offense against the United States government or to defraud the United States. And so really it didn't break down what that offense against the United States government might be. Your Honor, we believe that LUZEGA says that the elements must be, quote, considered, and that the agency showed that they considered the elements, including the underlying statute, not solely the conspiracy statute. I agree that the board in that paragraph did not cite the section number, but they said the respondent, quote, was convicted of conspiracy to commit passport fraud. And there are many times in the decision where they mention passport fraud, and it shows that they considered not just the conspiracy but the underlying crime. So if you assume that I disagree with you on that point, then do we need to send it back even if, again, assume here that we think it's likely that the agency would think passport fraud puts this offense within the ambit of a PSC? We don't think so, Your Honor, because I would argue alternatively that the Step 1 analysis, it's important to understand the purpose of it. And in the petitioner's reply brief, they argue that it's irrelevant that we raised the difference between the particularly serious crime analysis and the cadding workable approach analysis. But at Step 1, all that is described in the statute is that at Step 1 the elements should be examined and when the elements are examined, if it does not bring within the ambit or into the category particularly serious crime, you don't move to Step 2, and that is because, quote, the individual facts and circumstances of the offense are of no consequence. So at that step, what those words, I think what they mean is don't waste the court's time and resources. This Step 1 is about making sure that you're not looking at the elements of a crime that do not involve dangerousness at all. But here's the problem with the petitioner's approach to this issue. If you regard, if you look at a statute including, I admit that the federal conspiracy statute is very broad and it reaches many, many, many crimes. But here's the problem. It also reaches extremely serious crimes, conspiracy to commit aggravated assault, stab someone in the face. Because the conspiracy statute includes not only potentially minimal crimes but also very dangerous crimes, there is a, that checks the box for Step 1. Because otherwise, if you conclude, okay, this conspiracy statute, it's too overbroad. There are minimal crimes included in it. You will not be able to go to Step 2 to find out if it's dangerous. But the helpful protection that Step 2 provides is that if there's a very minimal conspiracy offense, again, conspiracy to commit jaywalking, at Step 2, the agency will immediately notice that the elements of this, none of them involve danger, and it would not be a PSC. It would only do that if it considered the underlying offense, the subject of the conspiracy. Yes, Your Honor. And I think that is why I go back to my other argument that the agency did demonstrate an understanding and a consideration of the underlying criminal conviction when it mentioned passport fraud so many times. And the petitioner, in their brief, mentioned passport fraud as the statute of conviction numerous times. And so I think that... Shouldn't we clarify that? I mean, it's there in the NAM, but shouldn't we clarify that? Because I'm not really at all sure that the BIA did what you're saying, that you're saying that it's implicit in the fact they looked at 371 and determined that, well, the conspiracy here involved passport fraud. Excuse me. I'm not at all sure they noticed that, too. It would be even more clear that the board had considered the underlying statute of misuse of a passport if they had cited the statute section and quoted the entire plea agreement. But we don't believe that Lusiga requires this extremely lengthy recitation of the elements, and if it did require that, it would be very difficult for the agency to comply. It's not that lengthy. It's two sentences. Yes, Your Honor. That's the first two sentences. But when you said implicit, I would point out the agency did not ask us to read its mind completely. It didn't mention passport fraud in its analysis of the elements, solely in that step one. Let me circle back to a conversation you had with Judge McKee. I want to ask you to send us a letter identifying published BIA opinions where they came to the conclusion that the crime at issue was not a particularly serious crime. You're asking for published BIA opinions where the step one determination was that it was not a particular serious crime. Assuming they exist. Yes. And I admit that they are few and far between because a petitioner would not challenge that on appeal. It would be in their favor, but I'm certainly happy to. The government never challenged it on appeal. Yes, Your Honor. I'm happy to provide anything I can find on that. Yeah, anything. Maybe in the last five years. Yes. And I did want to mention, very briefly, just on remand. I can understand why this court may determine that we are attempting to not concede error and citing a case that this court has recognized. Ren V. Gonzalez is a Seventh Circuit case, and this court recognized it in a very lengthy case named Il Difonso Candelario. But I can provide the site for that, which is 866 F. 3rd, 102 at 106. And that the agency may request a remand without confessing error. But we acknowledge that the agency needs another opportunity to provide more clarification on both of those issues. And so we're just asking for the court to remand. The board routinely remands to the immigration judge whenever fact-finding is at issue because the BIA can't do fact-finding on asylum in the first instance. So we don't think any special instructions are needed, but we agree that the board should not and cannot do cat fact-finding on its own without reviewing the immigration judge's fact-finding in that area. So did you just clarify which two issues you're asking for a remand on? Yes, Your Honor. First, and I believe also hope this is clarified in my supplemental brief as well, the first being consider all evidence of the past harm in the record, not only the harm from 20 years ago, but also the more recent incidents described in the letters from his mother, brother, and fellow union member. And secondly, should fully apply this court's CAT framework. And only on the CAT issues. That's right, solely on CAT. And it's solely on CAT deferral because the particular serious crime analysis, that would prevent the petitioner from being eligible for asylum and for two forms of withholding under the INA and the Convention Against Torture. So it's really just the CAT deferral that the petitioner is still eligible, and that's what we're requesting remand for. Now, Ms. Brooke, I said 1542 was as simple as two sentences. It's one sentence. And unlike many statutes that Congress favors it with, it's a pretty understandable sentence, pretty legible. It's a very short number of words, Your Honor, that you're identifying. But I did want to briefly flag something. This court in Luziga purported to summarize the elements at issue in that case, which is also a conspiracy case and an underlying conviction case. And this is what they said. They said at 254, she made no reference, the IJ, made no reference to the elements of Luziga's offense. That is, quote, two or more persons entered the unlawful agreement, charged in the superseding indictment, and Luziga knowingly and willfully became a member of that conspiracy to the extent that the board decided that. So they moved on. And this court felt that was a sufficient articulation of what the elements were in total. So I think, you know, the agency is not the only one. That's her decision? Yes, Luziga, Your Honor, at page 254. And so I would say that the agency is not the only adjudicating body that is summarizing elements in a more abbreviated manner and not always describing the underlying statute of conviction in full detail. That's just stating what a conspiracy is, what you just read. Yes. I agree, Your Honor. And I think while, again, it may be much more hyper-clear if you give an accurate list of every single word in the elements of the statute and every single statutory subsection at issue, the agency can indicate, and I think the court felt they could indicate here, what the offense of conviction is by describing it and by considering it. And that is what Luziga requires. Is this presidential or non-presidential? I'm sorry, Your Honor, one more time. Is that presidential or non-presidential? That's presidential, Your Honor. And it's the central case at issue, I think, in this matter because it's being described by petitioner as the reason the agency erred. But I think that reason hinges on the conveying whether you are considering elements. And this court felt that was a sufficient way to convey what the elements were. And so I think, you know, if the board had never mentioned passports, was only about what it means and how dangerous it is to provide passports, people who have never been vetted, and who you might be inviting into the country as a result, then I think it would be a different argument and a different conversation. But I do think that the agency gave indications by mentioning passport fraud that it was considering the elements and solely the elements at step one. Can I ask just a quick question about Myrie in Conteros? Yes. So is it your interpretation of Myrie in Conteros that when the agency finds that at step one, right, there are these two steps and two questions within each step. At step one, you know, whether it's likely that the petitioner will be subject to torture or what's likely to happen and whether that is torture. If they say that nothing bad is going to happen, hypothetical case, not Mr. Amos, nothing bad is going to happen to the petitioner. And even if it did, it wouldn't be, even if something bad happened, it wouldn't be torture legally. Does the agency still need to proceed to step two under Myrie in Conteros? I think that's a very interesting question. I have expressed what I believe is the best interpretation of this court's opinion in that regard in other cases, but I don't really think that we reached that issue here because we believe that remand is the best course of action. So I wouldn't provide an exact answer at this time for that reason, because I do think that it's clear that additional analysis is needed. And so I'm sorry that's not a satisfying answer, but that would be the position in this case. If there are no further questions, we're asking the court to dismiss the petition for review in part, to deny it in part, and to remand on cap deferral for further analysis from the agency. Thank you. Thank you. Your Honors, I'd like to address a couple points on Luciga that came up. Could you speak up a little bit? Sure. I'd like to address a few points about Luciga that came up from the government's time. First, I want to clarify that the crime of conviction in Luciga was conspiracy to commit wire fraud. That was not a 371 conspiracy. That is the conspiracy within the wire fraud statute, and therefore it is internally referential and limited in scope. I don't want any confusion because the elements of conspiracy were discussed. And secondly, I might have to reread Luciga because my recollection is that in that case, this court found that the IJ erred in its analysis. And so the idea that summarizing the elements is sufficient doesn't jive with my recollection of that case. And it doesn't fit with what the government described as the statute's requirement, which is that the elements must be examined. In this case, even if the BIA said conspiracy to commit passport fraud, stating passport fraud is not the same as examining the elements. The BIA did not do that in its decision. The government's argument would make Step 1 meaningless when Section 371 is the crime of conviction. The government stated that 371 is very, very broad. It can apply to many, many crimes. But the board and this court have said that Step 1, that ambit determination, is meant to mean something. It's not a question of whether someone was convicted of a crime or not. It's whether that crime falls within the ambit of a PSC. Finally, we are not asking this court to review the outcome of each step of the PSC analysis or even the final determination of the PSC analysis, but rather only whether the legal standards set forth by this court and by the board was properly followed here. And it was not. The government is asking this court to rubber stamp the agency's flawed decisions, but neither the government nor this court can fix those flaws. This case needs to be remanded to the agency for that correction. Thank you. The agency or the IJ? To the IJ. Thank you. Thank you very much. Ms. Doherty, thanks again. Thanks to the Temple Clinical Program for taking this case on a pro bono basis. It's greatly appreciated.